Dana **PRUETT** and Mandy **Wallace, Plaintiffs,**

v.

**KRAUSE GENTLE CORPORATION,**
**d/b/a KUM & GO, Defendant.**

**No. 4:01–CV–40178.**

United States District Court,
S.D. Iowa,
Central Division.

Oct. 8, 2002.

---

Thomas A. Newkirk, Kuhle Law Office, PC, West Des Moines, IA, for plaintiffs.

Thomas M. Cunningham, Pingel & Templer, PC, West Des Moines, IA, Gretchen R. Jensen, Goodman PC, West Des Moines, IA, for defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

GRITZNER, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiffs, Dana Pruett ("Pruett") and Mandy Wallace ("Wallace") filed their complaint on March 22, 2001, alleging that their former employer, Krause Gentle Corporation ("KGC"), terminated them because they were pregnant, in violation of the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000(e)(k), and the Iowa Civil Rights Act (ICRA), Iowa Code § 216.6(2)(a). On May 31, 2002, Defendant moved for summary judgment on all of Plaintiffs' claims.

The motion came on for hearing on September 11, 2002. Defendant was represented by Thomas Cunningham. Plaintiff was represented by Thomas Newkirk. For the reasons discussed below, Defendant's Motion for Summary Judgment is denied.

## I. BACKGROUND

Pruett was hired at Kum & Go Store # 206 on May 1, 1999, and Wallace was hired at the same store on June 2, 1999. Both were interviewed and hired by the then-acting store manager, Jim Heirings ("Heirings"). During her interview, Wallace informed the store manager that she was pregnant. He in turn recommended some places where she might be able to obtain some maternity clothes that would comply with Defendant's uniform policy, and he subsequently hired her. Shortly after both Plaintiffs were hired, the store manager who had hired them was replaced by Josh Stajcar ("Stajcar").

Shortly after Stacjar started as manager, Wallace alerted him to the fact that she was pregnant. Wallace also testified that Steve Day ("Day"), the district supervisor for Store # 206, knew she was pregnant. Pruett was not pregnant when she was hired, but she became pregnant during her employment with Defendant. Wallace eventually informed Day that Pruett was pregnant as well.

Pruett initially worked the night shifts, typically working the hours of 11:00 p.m.— 7:00 a.m. Occasionally, Pruett worked overtime hours, covering the 3:00 p.m.— 11:00 p.m. shift. Due to concerns over other employees not showing up in the morning to relieve her, Pruett resigned her position at Kum & Go on July 31, 1999. She was asked by Day to come back, and, when she returned on August 5, 1999, she began working the 3:00 p.m.—11:00 p.m. shift, the same shift that Wallace was working.

Defendant alleges that soon after Plaintiffs began working there, regular monthly inventory audits at Store # 206 revealed that the store was sustaining substantial losses. In a three-month period, the store lost over $12,000. Based on its experience in the convenience store industry, Defen-

dant generally submits that over 95 percent of a store's losses can be attributed to internal theft.

Steven Kimmes ("Kimmes"), Vice–President of Operations for Defendant, Day, and Stajcar met on or about September 6, 1999, to discuss the shortages that were occurring at Store # 206. After comparing the lengths and commencements of employment of all of the employees at Store # 206 in temporal relation to when the store began sustaining losses, they determined that the only variable was the commencement of Plaintiffs' employment. Kimmes made the decision to terminate the Plaintiffs' employment. Kimmes maintains that he did not know either woman was pregnant at the time he made the decision to terminate their employment.

Plaintiffs were both terminated by Day on September 8, 1999. Neither Plaintiff was given a reason for the termination, and Day informed them that he did not need to give them one.

On December 22, 1999, Plaintiffs filed charges of discrimination with the Iowa Civil Rights Commission ("ICRC"). On January 20, 2000, Kimmes responded to the charges filed with the ICRC by letter. In his letter, Kimmes asserted that the reason for the termination of the Plaintiffs was a poor and non-supportive attitude. He stated that "this apathetic behavior contributed to a non-harmonious work environment".

In April of 2000, Wallace visited Stajcar, now demoted and working at another store. It is undisputed that Stajcar stated to Wallace during this visit that the Plaintiffs' employment was terminated for suspicion of theft. This was the first time that either Plaintiff was told that she had been suspected of theft and that this is what resulted in their termination. Wallace asserts in her deposition testimony that Stajcar specifically stated that he knew that Wallace and Pruett had not engaged in theft.

Plaintiffs claim that Defendant unlawfully terminated their employment because they were pregnant. Defendant maintains that the Plaintiffs were terminated solely due to the suspicion that one or both of them was engaging in theft from the store.

## II. STANDARD OF REVIEW

■■■ "[C]laims lacking merit may be dealt with through summary judgment under Rule 56." *Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S.Ct. 992, 998–999, 152 L.Ed.2d 1 (2002). Summary judgment is a drastic remedy, and the Eighth Circuit has recognized that it "must be exercised with extreme care to prevent taking genuine issues of fact away from juries". *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1029 (8th Cir.2000). Summary judgment should seldom be granted in employment cases. *Bassett v. City of Minneapolis*, 211 F.3d 1097 (8th Cir.2000).

■■■ The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue". *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548); *see also Shelter Ins. Companies v. Hildreth*, 255 F.3d 921, 924 (8th Cir.2001); *McGee v. Broz*, 251 F.3d 750, 752 (8th Cir.2001). Once the

moving party has carried its burden, the opponent must show that a genuine issue of material facts exists. *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999). The court gives the nonmoving party the benefit of all reasonable inferences and views the facts in the light most favorable to that party. *de Llano v. Berglund*, 282 F.3d 1031, 1034 (8th Cir.2002); *Pace v. City of Des Moines*, 201 F.3d 1050, 1052 (8th Cir. 2000); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir.1997).

■ "Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Shelton v. ContiGroup Companies, Inc.*, 285 F.3d 640, 642 (8th Cir.2002) (citing *Henerey v. City of St. Charles*, 200 F.3d 1128, 1131 (8th Cir.1999)). Summary judgment should not be granted if the court can conclude that a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991). In light of these standards, the court considers the present motion.

## III. LEGAL ANALYSIS

■ Where a plaintiff does not offer any direct evidence of discriminatory intent to support their claim, Title VII and ICRA claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Lang v. Star Herald*, 107 F.3d 1308, 1311 (8th Cir.1997); *Reiss v. ICI Seeds, Inc.*, 548 N.W.2d 170, 174 (Iowa Ct.App.1996); *see also McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The initial burden is on the plaintiff to establish a *prima facie* case of discrimination. *Texas Dep't of Community Affairs v. Burdine*,

450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the plaintiff has satisfied this burden, a presumption of discrimination has been raised, and the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the action. *Id.* If the defendant provides a legitimate, nondiscriminatory reason for the termination, the burden shifts back to the plaintiff to show that the defendant's stated reason is in fact a pretext. *Id.*

To establish a *prima facie* case of discrimination based on pregnancy, each Plaintiff must show: (1) that they were a member of a protected class—pregnant females; (2) that they were qualified for their positions; and (3) that they were discharged under circumstances giving rise to an inference of discrimination. *Bergstrom–Ek v. Best Oil Co.*, 153 F.3d 851, 858 (8th Cir.1998); *see also Beard v. Flying J. Inc.*, 266 F.3d 792, 798 (8th Cir. 2001) (holding that Title VII claims and ICRA claims are analyzed under the same legal principles).

"[I]t is well-established that the threshold of proof necessary to establish a *prima facie* case is minimal." *Young v. Warner–Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir.1998); *see also Texas Dep't of Cmty. Affairs*, 450 U.S. at 253, 101 S.Ct. 1089 ("The burden of establishing a prima facie case is not onerous.").

It is clear that Plaintiffs have satisfied the first two elements of their prima facie case. Defendant concedes that Plaintiffs, as pregnant females, were members of a protected class, and, viewed in the light most favorable to the nonmoving party, Plaintiffs were qualified for their positions. Defendant has admitted that Plaintiffs were not fired due to any customer complaints, failure of secret shopper reviews, or attendance issues, but has denied the allegations that Plaintiffs were not fired due to work performance issues or attitude or insubordination. There does not appear

to be any indication, and Defendant has not produced any evidence, that Plaintiffs were not qualified for their positions.[1]

■ To satisfy the third element, Plaintiffs must establish that they were discharged under circumstances giving rise to an inference of discrimination. Defendants argue that the only fact on which Plaintiffs rely is that they were pregnant when they were terminated, a fact which, without more, is insufficient to support an inference of discrimination.

Plaintiffs note that the reason Defendant provided to the ICRC in January 2000 for their termination was "a poor and non-supportive attitude" and "apathetic behavior that contributed to a non-harmonious work environment". Plaintiffs claim that since this reason is different than the one Defendant asserts in the present case, an inference of discrimination is raised. The Eighth Circuit has held that an employer's offering of a different explanation than that given at the time of termination is sufficient to raise an inference of discrimination. *Young*, 152 F.3d at 1022; *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Plaintiffs can also establish this element by showing that they were treated less favorably from similarly situated non-protected class employees. *Id.* (citing *Price v. S–B Power Tool*, 75 F.3d 362, 365 (8th Cir.1996)). "[T]he employees to whom a plaintiff wishes to be compared must have been similarly situated in all relevant respects." *Britton v. City of Poplar Bluff*, 244 F.3d 994, 998 (8th Cir.2001). " 'Employees are similarly situated when they are accused of the same offense.' " *Id.* (quoting *Harvey v. Anheuser–Busch*, 38 F.3d 968, 972 (8th Cir.1994)) (quoting *Roh-*

*de v. K.O. Steel Castings, Inc.*, 649 F.2d 317, 322 (5th Cir.1981)).

As the Court finds that the Plaintiffs have established their prima facie case against the Defendant, the Defendant must produce a nondiscriminatory reason for their termination. Defendant contends that Plaintiffs were terminated because they were suspected of internal theft.

■ According to the Eighth Circuit, Defendant's "burden at this stage 'is a burden of production[,] not proof.' We do not question that theft is a legitimate ground for termination, and thus find that the [defendant] has met its burden to produce a legitimate, nondiscriminatory basis for its action". *Britton*, 244 F.3d at 997 (citations omitted) (affirming grant of summary judgment where the plaintiff failed to establish that the defendant's proffered reason that it suspected the plaintiff of theft was pretextual); *see also Stalter v. Wal–Mart Stores, Inc.*, 195 F.3d 285, 289 (7th Cir.1999) (recognizing employer's belief of employee theft as a legitimate, nondiscriminatory reason); *Jones v. Giant Foods, Inc.*, 2000 WL 1835393, at *2 (D.Md. Nov.27, 2000) (holding that the relevant inquiry is not whether the employee actually committed the theft, but whether the employer believed in good faith that she did). The Supreme Court has held that the burden can involve no credibility assessment. *See Reeves*, 530 U.S. at 142, 120 S.Ct. 2097. Suspicion of theft is a legitimate, nondiscriminatory reason for terminating an employee.

■ At this point, Plaintiffs " 'can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [pregnan-

---

1. For purposes of this analysis, the Court does not consider whether demonstrable dishonesty on the part of an employee would render the employee unqualified for such a position. As discussed further in this Order, the issue of alleged dishonesty on the part of the Plaintiffs remains unresolved.

cy or sex] was a determinative factor in the adverse employment decision' ". *Britton*, 244 F.3d at 997 (quoting *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1336–37 (8th Cir.1996)).

> The second part of this test may be satisfied without additional evidence where the overall strength of the prima facie case and the evidence of pretext 'suffice[s]' to show intentional discrimination. The focus, however, always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's [pregnancy/sex].

*Rothmeier*, 85 F.3d at 1337.

In other words, for Plaintiffs to survive summary judgment, "it is not enough to *disbelieve* the employer, but rather[,] the plaintiff's explanation of intentional discrimination must be *believed* ". *Barket v. NextiraOne, LLC.*, 2002 WL 1457631, at *4 (D.Minn. July 3, 2002) (citing *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097). There must be sufficient evidence from which a reasonable trier or fact could infer discrimination. *McGregory v. Crest/Hughes Techs.*, 149 F.Supp.2d 1079, 1090 (S.D.Iowa 2001) (citing *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1128 (8th Cir.1998)). In reaching their conclusion in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court stated in *Reeves* that "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation". *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097.

As noted in *Rothmeier*, 85 F.3d at 1337, Plaintiffs can use the same evidence to show pretext that they used to raise an inference of discrimination. Thus, the contradictory explanations that Defendant provided here and to the ICRC may satisfy this burden as well. *See Young*, 152 F.3d at 1023 (finding an inference of discrimination may arise without additional evidence).

Taking the record as a whole, a reasonable trier could infer that discrimination played a role in the termination of these two Plaintiffs. Despite Kimmes' deposition testimony to the contrary, KGC does in fact keep records that indicate the reasons why employees are fired. Plaintiffs' Exhibit # 11 clearly shows that reasons were indicated on these forms which terminated the employment of various employees. It remains unexplained why neither of the Plaintiffs' personnel files contained this form or any record of why they were terminated.

In addition, other than comparing the store losses against the hire dates of the employees at Store # 206, Defendant did nothing to verify that Plaintiffs were indeed responsible for the internal theft they believed was occurring. Prior to making their decision to terminate the Plaintiffs, Defendant did not review any of the videotapes taken by the security camera to check for evidence of theft on behalf of the Plaintiffs.[2] Defendant had access to records that would have indicated what employees worked certain shifts on a particular day. This information could have been compared against the records of the "voids", which in turn could have indicated if these employees were in fact engaged in theft. With no explanation offered as to why, Defendant concedes that they did not check these records prior to terminating Pruett or Wallace.

---

**2.** The Court recognizes the type of theft practices alleged by the Defendant may not be observable on the videotapes, but the failure to examine the videotapes would be one factor a reasonable fact-finder may weigh in assessing the quality of investigation used to support the Defendant's employment action.

Day admitted in his deposition that it was even possible that Stajcar was engaging in the internal theft that Defendant suspected was occurring. The record also indicates that this store routinely suffered losses during 1999, with the biggest loss coming in April, before either Plaintiff was hired. Day indicated that the losses continued to occur even after Pruett and Wallace were terminated. In addition, there were at least five other employees with start dates close in time to those of the Plaintiffs. Based only on the circumstantial evidence pertaining to the timing of the losses in relation to employee start dates, Defendant formed the belief that at least one of the Plaintiffs was committing internal theft and terminated them both, without giving them a reason for their termination.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097. "Consistent with Title VII, an employer may be held liable for dismissing an employee on the basis of a mixture of motives, including some legitimate and some illegitimate considerations." *Deneen v. Northwest Airlines Inc.*, 132 F.3d 431, 435 (8th Cir.1998); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). A factual question remains as to whether Plaintiffs' pregnancies were considered in the decision to terminate their employment. The lack of evidence supporting the Defendant's claim of suspicion of theft, combined with the conflicting explanations for the discharge, raises a factual issue as to why the Plaintiffs were terminated.

## IV. CONCLUSION

The Court finds that there is a genuine issue of material fact on essential elements of Plaintiffs' claims and that Defendant is not entitled to judgment as a matter of law. The motion for summary judgment (Clerk's No. 10) is **denied.**

**IT IS SO ORDERED.**