Erin SMIDT, Appellant,

v.

Thomas C. PORTER, Thomas C.
Porter & Associates, and Porter
& Associates, P.C., Appellees.

No. 03–1124.

Supreme Court of Iowa.

April 8, 2005.

Gordon R. Fischer of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellant.

Mark D. Aljets and Mary E. Funk of Nyemaster, Goode, Voigts, West, Hansell & O'Brien, Des Moines, for appellee.

STREIT, Justice.

A public relations firm fired a pregnant employee after she asked about maternity leave. The employee sued. She claimed unlawful discrimination, breach of contract, fraud, and violations of the overtime-pay provisions of the federal Fair Labor Standards Act. She later attempted to amend her petition to add a wrongful discharge claim. The district court dismissed the entire suit on the firm's motion for summary judgment and denied the employee's request to amend her petition. We reverse dismissal of the employee's unlawful discrimination and breach of contract claims, but affirm the rest of the district court's ruling. We remand for a trial on the surviving claims.

## I. Facts and Prior Proceedings

Thomas Porter is president and CEO of Porter & Associates, P.C. ("P & A"), a public relations and advertising firm in

West Des Moines. In June 2000, P&A hired Erin Smidt. Although it is unclear in what capacity Smidt was employed at P&A, this first stint at the firm was brief. In September 2000, Smidt received a lucrative offer to work for another company and resigned.

The next spring P & A rehired Smidt as Vice President of Business Development. The parties signed a written employment contract. The term of the contract was for one year and would end on May 1, 2002. P & A agreed to pay Smidt $60,000 plus a commission for new business Smidt brought to the firm. The contract contemplated that Smidt would spend approximately 95% of her time developing new clients and managing existing accounts; the remaining 5% would be on "administrative" matters. Paragraph 9(d) of the agreement stated that either party could terminate the contract without cause with thirty days' notice. If the firm invoked this provision Smidt was entitled to three months salary "exclusive of commissions."

P&A hired Diana Deibler to fill its President position at the same time it hired Smidt. Deibler had been working with Smidt at the company that had lured Smidt away from P & A. Deibler also signed a one-year employment agreement that contained an identical paragraph 9(d) for termination without cause. Porter testified he only hired Smidt because Deibler said she would not accept the job unless Smidt was also hired. Deibler denied this. Porter claims he viewed Smidt and Deibler as "a package deal."

In the ensuing months, Porter sent Smidt a number of emails in which he praised her work. Smidt never received any disciplinary notice from Porter, and to her all appeared well at P & A.

In October 2001, Smidt told P & A's human resources director she wanted to discuss the firm's maternity leave policy.

Smidt was pregnant. The human resources director referred Smidt to her employee manual. The P & A employee manual stated the firm was "committed to pay a portion of family leave up to six weeks." Pregnancy and newborn care were considered good reasons for leave. The manual stated, however, that Porter had to first personally approve all leave.

On January 24, 2002, Smidt asked Porter for a meeting about taking maternity leave. Porter initially agreed to meet Smidt and her attorney, Cynthia Hurley, but later cancelled. Porter was uncomfortable meeting with Hurley because her law firm was a client of P & A. The meeting was rescheduled for March 1, 2002. Porter and Smidt met once in the interim to discuss commission calculations, not maternity leave.

The day before the scheduled meeting concerning Smidt's maternity leave, P & A fired Smidt over breakfast. Smidt was seven-months pregnant. Porter handed Smidt a letter, in which P & A stated it had terminated Smidt's employment pursuant to "Paragraph 9(b)" of her contract. Paragraph 9(b) related to "total disability"; Porter claims he made a mistake and actually fired her pursuant to "Paragraph 9(d)," i.e., the termination-without-cause provision of the contract. When Smidt pressed Porter for the reason for her firing, he told her she lacked "agency experience." Porter later testified he fired Smidt because (1) he wanted to fire a poorly performing Deibler and viewed Deibler and Smidt as "a package deal"; (2) Smidt lacked agency experience and he was not pleased with Smidt's performance either; and (3) Smidt was disruptive and negatively affecting employee morale at P&A. In his defense, Porter also pointed out that P & A has provided maternity leave to ten pregnant employees over the

years, including to one woman who began her leave only a few days before Smidt was fired.

Smidt sued P & A and Porter personally for pregnancy discrimination in violation of state and federal civil rights statutes, breach of written and oral contract, fraud, and Fair Labor Standards Act overtime-pay violations. Smidt later sought to amend her petition to include a count for common law wrongful discharge. The district court dismissed all of Smidt's claims on the defendants' motion for summary judgment.

Additional facts will be set forth below.

## II. Principles of Review

■■■ Summary judgment principles are well settled. Summary judgment is proper only when the record shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). The court must view the record in the light most favorable to the nonmoving party. *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 228 (Iowa 2004). In deciding whether there is a genuine issue of material fact, the court should also afford the nonmoving party every legitimate inference the record will bear. *Id.*

## III. The Merits

### A. Statutory Pregnancy Discrimination Claims

■■■ In the district court, Smidt claimed she was fired because she was pregnant, in violation of Title VII and the Iowa Civil Rights Act (ICRA). *See* 42 U.S.C. § 2000e *et seq.* (2000); Iowa Code § 216.6 (2001). The district court ruled as a matter of law that Smidt was not fired because she was pregnant. The court relied upon

Porter's explanations for the firing, the undisputed evidence that Deibler was hired and fired at the same time as Smidt, and the fact that P & A has granted maternity leave to other employees.

■■■ Smidt has offered no direct evidence of discriminatory intent, and she invokes the burden-shifting framework identified in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to prove discriminatory motive.[1] *See Pruett v. Krause Gentle Corp.*, 226 F.Supp.2d 983, 987 (S.D.Iowa 2002) (applying *McDonnell Douglas* framework to resolve Title VII and ICRA pregnancy-discrimination claims under similar circumstances); *accord Casey's Gen. Stores, Inc. v. Blackford*, 661 N.W.2d 515, 519–20 (Iowa 2003); *Reiss v. ICI Seeds, Inc.*, 548 N.W.2d 170, 174 (Iowa Ct.App.1996). Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105, 116 (2000); *accord Fuller v. Iowa Dep't of Human Servs.*, 576 N.W.2d 324, 328 (Iowa 1998). Smidt must show (1) she was pregnant; (2) she was qualified for her position; and (3) her termination occurred under circumstances giving rise to an inference of discrimination. *See Pruett*, 226 F.Supp.2d at 987 (setting forth elements of prima facie case of discrimination based upon pregnancy); *accord Farmland Foods, Inc. v. Dubuque Human Rights Comm'n*, 672 N.W.2d 733, 741 n. 1 (Iowa 2003) (stating in general terms elements of a prima facie case of employment discrimination). This is a minimal requirement that is not as onerous as the ultimate burden to prove

---

**1.** Neither party challenges the viability of the *McDonnell Douglas* framework after *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), so we continue to apply it in this case.

discrimination. *Young v. Warner–Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir.1998).

 Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215 (1981); *accord Casey's Gen. Stores*, 661 N.W.2d at 519–20. This is a burden of production, not persuasion, and no credibility assessment is involved. *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106, 147 L.Ed.2d at 117. If the employer offers a legitimate nondiscriminatory reason, the plaintiff must show the employer's reason was pretextual and that unlawful discrimination was the real reason for the termination. *See id.* at 142–43, 120 S.Ct. at 2106, 147 L.Ed.2d at 117; *Bergstrom–Ek v. Best Oil Co.*, 153 F.3d 851, 857–58 (8th Cir.1998); *accord Casey's Gen. Stores*, 661 N.W.2d at 520.

Although the defendants belatedly challenged Smidt's ability to satisfy her prima facie case at oral argument, they bypassed this argument in their appeal brief.[2] Nor does Smidt dispute that the defendants have offered legitimate nondiscriminatory reasons for her firing. For these reasons, like the district court we focus our analysis upon the fighting issue in this appeal: whether Smidt can show the defendants intentionally discriminated against her on account of her pregnancy. *See Reeves*, 530 U.S. at 142–43, 120 S.Ct. at 2106, 147 L.Ed.2d at 117 (remarking that upon reaching the final step in the *McDonnell Douglas* analysis the framework of presumptions and burdens disappears and the sole issue is "discrimination *vel non*").

At this early stage in the proceedings, it is important to remember that we must view the facts in a light most favorable to Smidt and afford her all legitimate inferences the record will bear. *See Lloyd*, 686 N.W.2d at 228. Having waded into the murky waters of this case, we think the facts are sufficiently in dispute to warrant resolution by the trier of fact. · The question, after all, is simply whether Smidt has introduced sufficient admissible evidence from which a rational trier of fact could find Porter's alleged reasons for her termination were false, and intentional discrimination was the real reason. *See Bergstrom–Ek*, 153 F.3d at 857–58.

Whether judgment as a matter of law is appropriate in a case such as this one will depend upon a number of factors, including the strength of the plaintiff's prima facie case and the probative value of the proof the employer's explanation is false. *See Reeves*, 530 U.S. at 148–49, 120 S.Ct. at 2109, 147 L.Ed.2d at 120–21. In this case, a trier of fact could find the timing of Porter's termination was particularly suspicious. *Cf. Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1079 (8th Cir.2005) ("A plaintiff can establish a causal connection between his complaints and an adverse action through circumstantial evidence, such as the timing of the two events."); *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 761 (8th Cir.2004) (same). Porter fired Smidt the day before the two were scheduled to meet to discuss maternity leave—a meeting Porter had put off. Second, a trier of fact could choose not to believe Porter's after-the-fact justifi-

---

**2.** The defendants have not disputed Smidt's ability to meet her burden on the first two elements of her prima facie case. In the district court and at oral argument, however, the defendants argued Smidt could not meet the third element of her prima facie case. In spite of this fact, the defendants submitted proposed findings of fact and conclusions of law to the district court that bypassed this argument altogether. The district court ruling mirrors the defendants' proposed findings of fact and conclusions of law.

cations. Although there is circumstantial evidence in the record to support Porter's testimony that Smidt and Deibler were hired as part of "a package deal," a trier of fact could find the simultaneous firing of Smidt and Deibler was a manufactured coincidence. Porter's belated attempts to justify Smidt's firing on grounds of her alleged poor performance or disruptive behavior are particularly troublesome. The record is replete with evidence from which a trier of fact could find Smidt was meeting or exceeding Porter's expectations prior to her termination. For example, the record contains a number of email messages Porter sent to Smidt in which he repeatedly praised her performance. Porter also gave Smidt three purple cards with "smiley faces"; Porter only gave "smiley faces" to employees for particularly outstanding work. The defendants have offered no extrinsic evidence in existence before Smidt's termination that shows she was performing poorly. Likewise, there is no extrinsic evidence that any disciplinary action was taken against Smidt for disruptive behavior. The only evidence of Smidt's poor performance and behavior problems came after the termination and in the midst of litigation, and a trier of fact might find this suspect or may disbelieve the subjective evidence of Porter's thoughts about her work.

 If a trier of fact were to choose not to believe Porter's representations, the plaintiff's case may be successful. Although no cause for discharge is needed,

> [p]roof that the defendant's explanation is unworthy of credence ... may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that

the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Reeves*, 530 U.S. at 147–48, 120 S.Ct. at 2108–09, 147 L.Ed.2d at 119–20; *see also Young*, 152 F.3d at 1023; *Pruett*, 226 F.Supp.2d at 989. In other words, once a trier of fact rejects all legitimate reasons as possible reasons for the termination, it may find it more likely than not that the employer based his decision upon an impermissible reason. *Cf. Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957, 967 (1978). Summary judgment was not proper.

### B. Wrongful Discharge

 Smidt asked the district court for permission to amend her petition to include a count for a common law claim of wrongful discharge. In its summary judgment ruling, the district court addressed this request and denied it. The district court concluded the ICRA preempted the claim. We agree.

In her attempt to escape preemption, Smidt characterizes the basis for her wrongful discharge claim not as her pregnancy per se, but rather her repeated inquiries about and requests for maternity leave. Smidt argues there is a clear public policy in this state against employers firing employees who inquire about or request maternity leave and that this policy is not

subsumed under the pregnancy discrimination provisions of the ICRA.

The ICRA is preemptive. To the extent the ICRA provides a remedy for a particular discriminatory practice, its procedure is exclusive and the claimant asserting that practice must pursue the remedy it affords. *See, e.g., Channon v. United Parcel Serv., Inc.,* 629 N.W.2d 835, 858 (Iowa 2001) (holding ICRA preempted emotional distress claim based upon discriminatory acts); *Borschel v. City of Perry,* 512 N.W.2d 565, 567–68 (Iowa 1994) (holding ICRA preempted wrongful discharge claim premised on discriminatory acts); *Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627, 639 (Iowa 1990) (holding ICRA preempted claim of wrongful discharge predicated upon religious discrimination); *Hamilton v. First Baptist Elderly Hous. Found.,* 436 N.W.2d 336, 341 (Iowa 1989) (concluding ICRA preempted common law actions also premised upon discrimination). The ICRA preempts a claim when, "in light of the pleadings, discrimination is made an element of" the claim. *Channon,* 629 N.W.2d at 857; *accord Greenland v. Fairtron Corp.,* 500 N.W.2d 36, 38 (Iowa 1993). Preemption occurs unless the claims are "separate and independent, and therefore incidental, causes of action." *Channon,* 629 N.W.2d at 857.

*Channon* is similar to the case at bar and mandates preemption in this case. In *Channon,* as here, the plaintiff pled a tort in addition to her ICRA claim. We stated:

> [T]he key is Channon's characterization of her [tort] claim as stated in her pleadings. . . . Channon's pleadings clearly establish that the operative facts which she alleges give rise to her claims under the ICRA are the same as those upon which she relies as giving rise to her [tort] claim. In short, her [tort] claim is based on her allegations of discrimina-

tion. The ICRA therefore preempts her claim. . . .

*Id.* at 858. In her proposed amended petition, Smidt stated P & A and Porter violated the ICRA "[i]n terminating Smidt due to her pregnancy, *and in retaliation for her voiced concerns about maternity leave.*" (Emphasis added.) Smidt's pleadings clearly establish that the operative facts which she alleges give rise to her claims under the ICRA are the same as those forming the basis for her proposed wrongful discharge claim. The ICRA therefore preempts Smidt's proposed wrongful discharge claim. *Id.* It makes no difference that Smidt now attempts to bifurcate the factual underpinnings of each claim on appeal. The district court correctly declined to grant Smidt permission to amend her petition.

## C. Fair Labor Standards Act Overtime–Pay Claim

In the district court, Smidt claimed she was a "nonexempt" employee under the Fair Labor Standards Act (FLSA), and therefore P & A owed her overtime pay for every hour she had worked each week over forty during her tenure there. The district court ruled as a matter of law that Smidt was an "exempt" employee, and therefore P & A did not violate the FLSA. We agree.

The FLSA states that, as a general rule, an employee must be paid at least time-and-a-half for all overtime hours worked. 29 U.S.C. § 207(a)(1). The FLSA carves out an exception for employees who work "in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a)(1). The FLSA does not define these three terms; Congress delegated this responsibility to the Secretary of Labor. *Raper v. State,* 688 N.W.2d 29, 36 (Iowa 2004). The Secretary of Labor has promulgated extensive regulations, including several tests, to determine whether a particular employ-

ee is exempt from the FLSA overtime-pay requirement. *See id.*

■ In this appeal we are only concerned with whether Smidt is an "administrative" employee. P & A bears the burden to prove Smidt's exempt status. *Id.* (citing *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 999 (8th Cir.2003)).

### 1. Job Description Not Dispositive

■ As a threshold matter, Smidt argues that because her employment contract labeled only 5% of her work as "administrative," she was clearly not an "administrative" employee under the FLSA. This argument puts form over substance. The federal regulations clearly indicate the employee's job title is not dispositive. 29 C.F.R. § 541.201(b) (2002) (noting job titles may be "had cheaply" and have "no determinative value"); *see, e.g., Demos v. City of Indianapolis,* 126 F.Supp.2d 548, 559 (S.D.Ind. 2000); *Cooke v. Gen. Dynamics Corp.,* 993 F.Supp. 56, 61 (D.Conn.1997); *Freeman v. Nat'l Broad. Co.,* 846 F.Supp. 1109, 1115 (S.D.N.Y.1993), *rev'd on other grounds,* 80 F.3d 78 (2d Cir.1996). "Reliance on the employer's characterization of [the employee's] activities through an employer-created job description is similarly suspect." *Demos,* 126 F.Supp.2d at 559. The Act obliges us to look to the nature of Smidt's employment, not the employer's characterization of it. 29 C.F.R. § 541.201(b); *see, e.g., Demos,* 126 F.Supp.2d at 559. "We must think things not words, or at least we must constantly translate our words into the facts for which they stand, if we are to keep to the real and the true." Oliver Wendell Holmes, Jr., *Law in Science and Science in Law,* 12 Harv. L.Rev. 443, 460 (1899). We are required to evaluate Smidt's employment on the ba-

sis of the tests the federal regulations prescribe, not whatever description the employer might use. The parties in this case discuss two tests: the so-called "duties" test and the "salary-basis" test. We consider each in turn.

### 2. Duties Test

■ To prove Smidt was an administrative employee, P & A must satisfy the duties test. Because Smidt earned in excess of $250 a week, we apply the "short test." 29 C.F.R. § 541.214(a); *see also id.* § 541.2. The "short test" defines an "administrative" employee as one whose

> primary duty consists of either the performance of office or nonmanual work directly related to management policies or general business operations of the employer or the employer's customers . . . where the performance of such primary duty includes work requiring the exercise of discretion and independent judgment.

*Id.* § 541.214(a). Smidt claims her job as P & A's Vice President of Business Development was not "administrative" in this sense, but rather one of "production."

Smidt was clearly an administrative employee as defined in the federal regulations. Those regulations indicate that the administrative exception includes employees "who perform work of substantial importance to the management or operation of the business of [the] employer or [the] employer's customers." *Id.* § 541.205(a). Administrative duties include "advising the management, planning, negotiation, representing the company, purchasing, promoting sales, and business research and control." *Id.* § 541.205(b). It specifically includes "account executives of advertising agencies." *Id.* § 541.205(c)(5).

As Vice President of Business Development for P & A, Smidt made sales calls,

did sales follow-ups, made presentations, networked, was visible in the community, and researched prospective clients. All her efforts were directed to the ultimate end of keeping and generating clients for P & A, an advertising and public relations firm. Smidt's "primary duty" plainly consisted of "the performance of office or nonmanual work directly related to management policies or general business operations of the employer or the employer's customers." *Id.* § 541.214(a). She was an account executive for an advertising agency.

It is also important to note that Smidt retained considerable discretion and exercised independent judgment in the performance of her job. The regulations define the phrase "the exercise of discretion and independent judgment" as "the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." *Id.* § 541.207(a); *accord Raper,* 688 N.W.2d at 41 (citing *Robinson–Smith v. Gov't Employees Ins. Co.,* 323 F.Supp.2d 12, 20 (D.D.C.2004)). "The exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a); *accord Raper,* 688 N.W.2d at 41 (citations and internal quotations omitted). Smidt testified she exercised her own discretion and judgment in carrying out her duties and was free to schedule her days as she saw fit. She was not paid to do manual or secretarial work. As an account executive for the firm, her work was of "substantial importance to the management or operation of the business of [the] employer or [the] employer's customers." 29 C.F.R. § 541.205(a). The defendants meet the duties test as a matter of law.

### 3. Salary–Basis Test

An employee is exempt under the salary-basis test if she receives a predetermined amount of compensation each pay period that is not subject to reduction on account of the quality or quantity of her work. *Id.* § 541.118(a); *see, e.g., Fife v. Harmon,* 171 F.3d 1173, 1175 (8th Cir. 1999). In *Raper,* we framed the issue this way:

> If an employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, *which amount is not subject to reduction because of variations in the quality or quantity of the work performed,* the employee is considered to be paid on a salary basis. For an employee to qualify for exempt status, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.

*Raper,* 688 N.W.2d at 46 (citations and internal quotations omitted; emphasis added).

It is uncontroverted that while at P & A, Smidt received a salary of $60,000 per year. To nonetheless prove P & A cannot meet the salary-basis test, Smidt points to emails she received during the course of her employment from P & A's director of human resources. In one of the emails, the director stated that if Smidt did not work eight hours in a day, she would have to make up that time in the same week or take vacation to cover the shortfall because "you are being paid for forty hours a week."

Even if we were to assume the practice outlined in the email were implemented (P&A claims the email is a misstatement of its policy), it would not render Smidt ex-

empt. The overwhelming majority of courts have held that a deduction from an employee's accrued vacation or personal time for absences does not destroy the employee's status as a salaried employee because it does not constitute a reduction in "salary" or "compensation." *See, e.g., Barner v. City of Novato,* 17 F.3d 1256, 1261–62 (9th Cir.1994) (concluding use of the words "amount" and "compensation" in regulations refers to "cash" or "salary," not personal or vacation time); *York v. City of Wichita Falls,* 944 F.2d 236, 242 (5th Cir.1991); *Cruz v. McAllister Bros., Inc.,* 52 F.Supp.2d 269, 289–90 (D.P.R. 1999) (collecting cases); *Aiken v. County of Hampton,* 977 F.Supp. 390, 396–97 (D.S.C.1997), *aff'd,* 172 F.3d 43 (4th Cir. 1998) (table case); *accord Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1070 (7th Cir.1997) ("Nothing in the regulations suggests that an employee loses his exempt status simply because his employer disciplines him in a non-monetary fashion for failing to work during his scheduled time.").[3] The defendants meet the salary-basis test as a matter of law.

## D. Breach of Written Contract

■ Smidt claims P & A breached the terms of its written contract when it fired her. Smidt acknowledges that under the contract P & A had the right to fire her without cause, but claims P & A did not live up to the obligations it incurred when it did.

The relevant portion of the termination without cause provision of the contract provides [4]:

(d) This Agreement may be terminated by [P & A] or [Smidt], with or without cause, for any reason or no reason, by providing at least thirty (30) days written notice of such intent to the other. If [P & A] terminates this Agreement pursuant to this [section] "without cause," [Smidt] shall receive severance pay in an amount equal to three (3) months of [Smidt's] annual salary exclusive of commissions, payable in equal monthly installments over three (3) months from the date of the termination.

It is not disputed that P & A paid Smidt three months severance. Instead, Smidt claims P & A breached paragraph 9(d) because it (1) underpaid her commissions she earned and should have received before she left and (2) did not pay her commissions she "earned" but was not due to receive until after she was fired.[5] With respect to the latter claim, Smidt claims the phrase "exclusive of commissions" is ambiguous, and could be construed to mean she would receive severance pay and these commissions "previously earned."

We think Smidt has presented sufficient evidence on the first part of her claim to survive summary judgment. Paragraph 2(b) of the parties' contract stated that P&A would pay Smidt a 15% commission on certain operating income Smidt generated. Smidt testified she was underpaid commissions during her tenure at P & A, was not paid commissions in a timely fash-

---

3. We also point out that employers are, in any event, free to reduce an employee's salary for full-day absences. 29 C.F.R. 541.118(a)(2).

4. In her brief, Smidt admits it "completely misses the point" that P & A's letter of termination mistakenly references paragraph 9(b) of the contract. We do not consider this scrivener's error in our decision.

5. Elsewhere the contract indicated that "[c]omissions will be paid on all projects for 12 months following the date the first cost estimate is signed by the client." Smidt claims she "earned" her commissions at the moment she garnered the business for P & A. We do not understand Smidt to be claiming that she should receive commissions for business she might have brought in during the three months after she was fired.

ion, and her operating income was not calculated correctly. Smidt described one occasion where, after a lengthy meeting with several executives, she was awarded a check for more than $750 in overdue commissions. Deibler, who was President of P&A at the time and present at the meeting, testified she believed P & A underpaid Smidt's commissions. P & A does not specifically address these allegations, except to argue generally that "the undisputed facts prove [Smidt] has received everything to which she was entitled under the written agreement." The facts are plainly in dispute, however, and therefore summary judgment on this portion of Smidt's breach of written contract claim was not proper.

■ We affirm the district court as to the remainder of Smidt's claim. The plain language of the parties' contract states that severance was based on salary "exclusive of commissions." This phrase is not ambiguous; anticipated future commissions were clearly excluded from the severance package. It is a fundamental and well-settled rule that when a contract is not ambiguous, we must simply interpret it as written. *State Pub. Defender v. Iowa Dist. Ct.*, 594 N.W.2d 34, 37 (Iowa 1999); *Rogers v. Maryland Cas. Co.*, 252 Iowa 1096, 1098–99, 109 N.W.2d 435, 437 (1961).

### E. Breach of Oral Contract

■ Smidt claims Porter orally promised her (1) future promotions, (2) renewal of her contract, and (3) support staff to serve her accounts. At her deposition, Smidt indicated these promises were made to her at the time she signed her written contract. A month later, Smidt signed an affidavit in which she indicated these promises were made "several times during the entire course of my employment." Smidt asserts she turned away other opportunities in reliance upon Porter's prom-

ises. Deibler signed an affidavit confirming Smidt's story.

The district court dismissed Smidt's oral contract claim because it held as a matter of law that the terms of the alleged oral agreement were integrated into the parties' written contract. The district court pointed out that the parties' contract contained an integration clause and Smidt was represented by counsel during arms-length negotiations with P & A; the court also noted that Smidt's counsel proposed specific new language into the written contract at the negotiations that P & A eventually accepted.

To the extent Smidt alleges the promises were made prior to or contemporaneously with the signing of the written contract, we agree with the district court that dismissal of her breach of oral contract claim was proper. There are no facts in dispute which could lead a reasonable person to find that the contract was not fully integrated, and therefore the parol evidence rule bars introduction of extrinsic evidence of such promises to modify or supplement the terms of the written agreement. *See, e.g., Whalen v. Connelly*, 545 N.W.2d 284, 290–91 (Iowa 1996); Restatement (Second) of Contracts § 213 (1981).

■ That said, the parol evidence rule does not bar introduction of evidence of *subsequent* negotiations to show modification of a written contract. *Whalen*, 545 N.W.2d at 291; *Baie v. Nordstrom*, 238 Iowa 866, 869, 29 N.W.2d 211, 213 (1947). The district court recognized the affidavits of Smidt and Deibler were evidence of a subsequent agreement, but did not consider them in its analysis. Citing a recent decision of the Eighth Circuit Court of Appeals, the district court ruled that the affidavits directly contradicted Smidt's prior deposition testimony and therefore were insufficient to withstand summary judgment. *See Herring v. Canada Life Assur-*

*ance Co.*, 207 F.3d 1026, 1030–31 (8th Cir. 2000) (opining that a party opposing summary judgment may not create a "sham" issue of fact by filing an affidavit that directly contradicts prior deposition testimony) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365–66 (8th Cir.1983)). Whatever the merits of such a rule (the defendants do not point to any Iowa cases on point), we do not think it should apply in a case such as this one, wherein one of the proffered affidavits comes from someone other than the person who was deposed. The question is simply one of credibility: should one believe Smidt's deposition testimony or the affidavits of Smidt and Deibler a month later? "[T]he credibility of witnesses is peculiarly the responsibility of the fact finder to assess." *Estate of Hagedorn ex rel. Hagedorn v. Peterson*, 690 N.W.2d 84, 88 (Iowa 2004); *accord Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 468 (Iowa 2000); *Herring*, 207 F.3d at 1031 ("Normally, in circumstances such as this, it would be for the jury to resolve the discrepancy in the deposition testimony and the affidavit."). We will not invade its province in this case.

■ In the alternative, Porter contends the statute of frauds should bar introduction of evidence of any such subsequent oral agreement because the promises of future promotions, renewal of a contract, and hiring of support staff could not have been performed within one year. *See* Iowa Code § 622.32(4) (codifying relevant provision of the statute of frauds). *See generally St. Ansgar Mills, Inc. v. Streit*, 613 N.W.2d 289, 292–94 (Iowa 2000) (explaining history and purpose of statute of frauds). This

is simply not so. The question engendered by the statute of frauds is solely one of capability of performance: Porter clearly *could have* promoted Smidt, renewed her contract, or given her support staff within one year. *Blair Town Lot & Land Co. v. Walker*, 39 Iowa 406, 412 (1874) (noting that even where difficult or improbable, the contract is not within the statute of frauds if capable of performance within a year). The statute of frauds does not apply. Summary judgment was not proper.[6]

## F. Fraudulent Misrepresentation

■ In a final salvo, Smidt argues the alleged breach of the oral and written contracts constituted fraudulent misrepresentation. The elements of fraudulent misrepresentation are (1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent; (6) justifiable reliance; and (7) resulting injury. *Lloyd*, 686 N.W.2d at 233; *Hyler v. Garner*, 548 N.W.2d 864, 872 (Iowa 1996). Smidt must prove her claim by a preponderance of clear, satisfactory, and convincing evidence. *Lloyd*, 686 N.W.2d at 233. The district court ruled as a matter of law that Smidt could not prove intent or reasonable reliance.

■ We agree there is insufficient evidence in the record to show intent to deceive and reasonable reliance. Even if we were to assume Porter promised Smidt "long-term" employment with the various benefits and accoutrements she alleges, it is undisputed that Smidt had sought these same things from Porter prior to the signing of her written contract. Yet from these extensive arms-length negotiations

---

6. We point out that the defendants do not argue on appeal that the terms of the claimed oral contract were insufficiently definite. We do not consider this issue, notwithstanding the fact the plaintiff briefs it. Nor do the

parties address, for the purposes of the statute of frauds, the term of the renewed contract or whether that contract would also be terminable at will and thus capable of performance within one year.

Smidt only received a written contract for one year that was terminable at will and did not contain promotions or the hiring of support staff. There is no evidence of existing fraudulent intent here. The thrust of Smidt's claim is that Porter broke his promises only *later* when he learned she was pregnant.

> When a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action, either for deceit, or for equitable relief. Otherwise any breach of contract would call for such a remedy. The mere breach of a promise is never enough in itself to establish the fraudulent intent.

*Magnusson Agency v. Pub. Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 29 (Iowa 1997). Whatever the merits of Smidt's breach of contract claims, there is clearly no fraud here. Summary judgment on this issue was proper.

### IV. Conclusion

The district court erred when it dismissed Smidt's statutory pregnancy discrimination claims and breach of oral and written contract claims. Dismissal of Smidt's FLSA overtime-pay claim and fraud claim was proper, and the court properly denied Smidt's motion to amend her petition to include a count of wrongful discharge. We remand for a trial on Smidt's surviving claims.

Costs on appeal are assessed against the defendants.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

All justices concur except TERNUS and CADY, JJ., who take no part.