# IN THE COURT OF APPEALS OF IOWA

No. 16-0462
Filed March 8, 2017

**TIMOTHY FITZGERALD,**
    Plaintiff-Appellant,

**vs.**

**HY-VEE, INC. d/b/a HY-VEE and
RYAN ROBERTS, Individually,**
    Defendants-Appellees.
_____

    Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.


    Timothy Fitzgerald appeals from a district court's ruling granting summary

judgment in favor of Hy-Vee, Inc. and Ryan Roberts.  **AFFIRMED.**



    Megan C. Flynn and Michael J. Carroll of Coppola, McConville, Coppola,

Carroll, Hockenberg & Scalise, P.C., West Des Moines, for appellant.

    Kermit B. Anderson of Finley Law Firm, P.C., Des Moines, for appellees.



    Heard by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, Presiding Judge.**

Timothy Fitzgerald appeals from a district court's ruling granting summary judgment in favor of Hy-Vee, Inc. and Ryan Roberts. He asserts the district court erred (1) by failing to view the facts in the light most favorable to him, the nonmoving party; (2) in its analysis of his prima facie case of discrimination and in holding he had failed to create a fact issue as to pretext; and (3) by holding his failure-to-accommodate claims were time-barred. We affirm.

### I.      Background Facts and Proceedings

Fitzgerald began working for Hy-Vee as a night stocker in December 1989. He held many positions with Hy-Vee over the years, but, in 2003, Fitzgerald became a manager in the international food service department, a position he held until his discharge in 2012.

In July 2011, Fitzgerald suffered a knee injury and underwent surgery to repair a torn meniscus and scarred cartilage. From July 21, 2011, through September 25, 2011, Fitzgerald was on leave, pursuant to the Family and Medical Leave Act (FMLA), for his knee surgery and recovery. Fitzgerald returned to work in late September with a restriction that he was to sit as needed for pain and swelling. Fitzgerald claims he gave the doctor's note to the store's manager of operations, Katie Good. Good testified in her deposition that she was not aware of Fitzgerald's restrictions.

Roberts was the store director at the Hy-Vee location where Fitzgerald worked. The store director is the highest management employee at each store and oversees all store operations, including decisions regarding employment.

Soon after Fitzgerald returned, Roberts called Fitzgerald to his office to discuss a disparaging remark about a coworker that Fitzgerald had allegedly made. According to Fitzgerald, Roberts told Fitzgerald his department could "operate without him." In a subsequent meeting, Roberts allegedly told Fitzgerald he had treated his FMLA leave like a "vacation," and if Roberts had been the one on leave, he still would have come into the store "two or three times per week" while recuperating. Roberts denied or did not remember making these remarks to Fitzgerald. However, Roberts testified he remembered telling Fitzgerald several employees had made complaints about Fitzgerald upon his return when there had been no complaints while he was on leave.

Fitzgerald also claims that, in early October, Roberts passed Fitzgerald on the sales floor, saw him limping, and asked him how he was doing. Fitzgerald informed Roberts he was in a lot of pain, and Roberts allegedly suggested to Fitzgerald that he should get stronger pain medications and a second opinion regarding the swelling of his knee. In mid-October, Roberts asked Fitzgerald to cut staff hours from his department and, as a result, Fitzgerald was required to perform more physical work and stand for long periods of time without resting. Fitzgerald told Roberts he was already in pain and the new requirements were too physically demanding for him. Roberts allegedly responded, "That's between you and your doctor." At his deposition, Roberts did not recall the first incident but agreed he had asked Fitzgerald to cut staff hours and reduce labor costs. Roberts did not remember Fitzgerald making complaints about his injury.

Thereafter, Fitzgerald went to see his psychotherapist, who instructed Fitzgerald to take two weeks off of work and consider filing a harassment

complaint against Roberts.  On this advice, Fitzgerald spoke with Randi Powell in Hy-Vee's human resources department and filed an internal complaint against Roberts.  According to Fitzgerald, Powell informed him there had been previous complaints made against Roberts.  Consequently, Hy-Vee conducted an investigation of Roberts and placed Fitzgerald on leave for two weeks.  Roberts was aware Fitzgerald had filed a complaint against him and testified he was not upset with Fitzgerald but, rather, disappointed Fitzgerald had not communicated his complaints to Roberts directly.

Before his leave ended in November 2011, Fitzgerald returned to Hy-Vee to assist with preparation for a holiday celebration.  Hy-Vee's vice president of operations, Laura Fulton, spotted Fitzgerald helping with the preparations and told him that, if he had not been released to work by his doctor, he should not be working in the store, even if he was volunteering.  Fulton allegedly told Fitzgerald the investigation of Roberts had revealed Roberts had issues he needed to work on and Fulton intended to work with him on his issues.  Fulton also told Fitzgerald he needed to take things "less personal" and maybe he was "overly sensitive."  Fulton requested Fitzgerald bring in his work restrictions before he returned to work.[1]  Fitzgerald obtained a new doctor's note, which permanently restricted him to sitting at least half of every hour.  Fitzgerald claims he placed the note on Roberts's desk, which was customary for employees to do when Roberts was not in his office.  Roberts denied receiving the note or being aware

_____

[1] The sequence of events in this paragraph is somewhat confusing in the record, but we have chosen to recite them as set forth by Fitzgerald in his affidavit submitted in the summary judgment proceedings.

of Fitzgerald's restrictions. Roberts also stated Fitzgerald never requested an accommodation.

Fitzgerald contends Roberts ignored his work restrictions, which caused ongoing pain and swelling in his knee. Fitzgerald claims he did not make any further complaints because he believed they would result in no action or an adverse action for himself. To deal with the pain and swelling in his knee, Fitzgerald began abusing prescription pain medications and became addicted as a result. When the pain medications became less effective, Fitzgerald started abusing alcohol. Fitzgerald claims he complained about the pain and swelling in his knee to his coworkers frequently and Roberts knew of his addictions because Fitzgerald was required to disclose the medications he was taking to Roberts and when his dosages increased. He further asserts his coworkers and managers knew he was struggling with addiction because he was the subject of running jokes among his coworkers for his odd behavior, including his "overly enthusiastic use of the intercom system to make store announcements." Additionally, in Fitzgerald's January 2012 performance review, Roberts wrote: "Tim, [w]hen you are on, there is no one that can match your abilities. Be more consistent with this. You have days where its clear you are struggling. Let me know what I can do to help you with this so we can move forward." However, Fitzgerald did not tell Hy-Vee or Roberts that he was addicted to pain medications or alcohol and did not ask for help related to his addictions until August 31, 2012.

On August 30, 2012, Fitzgerald was talking to another employee near his department on the sales floor. During their conversation, Fitzgerald referred to

another food service manager, Suzanne Obermeier, as a "cunt," loud enough for Obermeier to overhear what was said.[2] Fitzgerald asserts he and Obermeier were managers of departments in close proximity to one another and had had differences about sharing workspace but, overall, he got along with Obermeier and never had any problems. Obermeier was greatly offended by Fitzgerald's comment and reported it to Rusti Subject, who was the manager of perishables and the direct supervisor of Fitzgerald and Obermeier.

The following day on August 31, Subject reported the incident to Roberts who had been out of the store most of the week helping set up for a local event. At Roberts's request, Subject confronted Fitzgerald about the comment and another complaint by Obermeier that Fitzgerald had called her a "bitch" that morning. Obermeier was so upset about Fitzgerald's comments she threatened to quit. Fitzgerald admitted to Subject the first occasion of using an offensive reference to Obermeier but denied the second one. Fitzgerald also stated he had been joking and did not know his comment had offended Obermeier. Fitzgerald claims he apologized to Obermeier and believed the matter was settled. After Subject spoke with Fitzgerald and confirmed the first comment had been made, he relayed the information to Roberts, who contacted the Hy-Vee corporate office about the incident. Later that day, Roberts and Linda Threlkeld, the assistant vice president of human resources, met with Obermeier and Subject separately at the store. Obermeier confirmed both incidents had occurred and that she was upset about them. Subject also confirmed at least the

---

[2] The parties dispute which employee Fitzgerald was speaking with at the time. However, there is no dispute the comment was made to a coworker.

first incident and stated Fitzgerald had told him it was a bad joke. Roberts and Threlkeld determined Fitzgerald had violated the company's anti-harassment policy, which defines discriminatory harassment to include "verbal . . . conduct that degrades, offends, is negative toward, and/or shows hostility toward an individual because of the individual's . . . sex." The policy further provides any violation "may result in discipline, up to and including discharge." Roberts and Threlkeld then called Fitzgerald in to discuss the incidents.

During the meeting, Fitzgerald admitted the first incident but again denied the second. He told Roberts and Threlkeld his comment about Obermeier had been a joke. Roberts and Threlkeld informed Fitzgerald he had violated Hy-Vee's anti-harassment policy and his employment was terminated. Fitzgerald pleaded with Roberts in an attempt to save his job and disclosed he had made the comment because he was addicted to pain medication and alcohol and needed treatment. According to Roberts, that was the first time Fitzgerald had mentioned any drug use or addictions. At Fitzgerald's unemployment insurance appeal hearing in May 2013, he testified it was only after the incident with Obermeier that he realized he had a "problem." Roberts, Subject, and Good all testified there was no indication that Fitzgerald was suffering from alcoholism or an addiction to pain medications.

Hy-Vee and Roberts contend Fitzgerald's employment was terminated during this August 31, 2012 meeting. They assert Fitzgerald became upset and asked if he could transfer to another store, and they responded it would be up to the directors at other stores whether to hire Fitzgerald. Threlkeld allegedly told Fitzgerald his termination would not be processed until the following Monday

after the pay period ended and Fitzgerald was paid the vacation he was owed for the holiday. Hy-Vee and Roberts claim they informed Fitzgerald that he could transfer but it was made clear to him that his employment at that location was terminated as of August 31, 2012. Fitzgerald claims Roberts made a phone call for Fitzgerald during the meeting to ask about a transfer for Fitzgerald to another store. Fitzgerald also claims he believed his job was spared based on the statements that his termination would not be immediately processed and he could transfer to another store. He contends Roberts and Threlkeld did not give him a timeframe for when his termination paperwork would be processed or even that it would be processed at all.

Text messages between Fitzgerald and Roberts that evening reveal Roberts notified Fitzgerald of different openings at nearby stores and wished him luck in finding a transfer. Fitzgerald responded, "Thankyou for your support, sorry I put you though this. I hope it strengthens me." Fitzgerald also wrote: "We take so much for granted, please tell staff it was an issue with my health? I don't.want.to leave disgraced, its still my home." The following morning, Fitzgerald sent Roberts a text stating: "Ryan, yesterday afternoon was a haze? I need clarification. . . . . When Linda said she wouldn't term me, does that mean I can transfer if the opportunity arises.? So I don't [lose] health care? . . . I'm asking because theirs an opening for.a full time kitchen clerk at [another store]." Roberts responded, "That's right. I will not term right away in case you are able to transfer." Other messages indicate Roberts's willingness to put in a good word for Fitzgerald with the directors of the other stores.

Roberts completed a termination report for Fitzgerald dated August 31, 2012. Subject completed a similar report dated September 1, 2012. Roberts testified in his deposition that he formally processed Fitzgerald's termination paperwork on Monday, September 3, 2012. The following day on September 4, Fitzgerald contacted Roberts to request leave under FMLA, having visited his psychotherapist over the long weekend who recommended Fitzgerald seek treatment for his addictions before transferring to another store. Roberts denied Fitzgerald's request stating his employment had already been terminated. Fitzgerald submitted his FMLA paperwork to Subject anyway.

On June 6, 2013, Fitzgerald filed a complaint with the Iowa Civil Rights Commission (ICRC). In his complaint, Fitzgerald alleged Hy-Vee discriminated against him due to his disability when it denied an accommodation and benefits and terminated his employment. Fitzgerald identified his disability as "[a]lcohol and chemical addiction" and "[j]oint issues in my knee which led to addiction and abuse of pain killers." Fitzgerald identified August 31, 2012, as the date his employment was terminated.[3] Fitzgerald stated he did not request an accommodation because he feared reprisals.

On September 4, 2014, Fitzgerald filed a petition in district court alleging Hy-Vee and Roberts discriminated against him in violation of the Iowa Civil Rights Act (ICRA), Iowa Code chapter 216 (2014), based upon his disabilities. Fitzgerald complained Hy-Vee and Roberts discriminated against him "by

---

[3] However, in the brief summary of allegations, Fitzgerald asserted Roberts only "attempt[ed] to terminate my employment" on August 31 and then told him he "could transfer to another store." Fitzgerald asserted he contacted Roberts after his appointment with his psychotherapist on September 4 to ask for leave under FMLA and Roberts responded, "How can I do that? I terminated you."

terminating his employment because of his disability, by not accommodating his known disability, and by harassing him because of the limitations placed upon him as a result of his impairment." Hy-Vee and Roberts answered, denying Fitzgerald's claims and asserting the affirmative defenses of timeliness and jurisdiction. On November 23, 2015, Hy-Vee and Roberts filed a motion for summary judgment. The court held a hearing on the motion for summary judgment on January 19, 2016, at which Fitzgerald confirmed he was not asserting a separate and discrete "harassment" claim, but rather, his only claims were that Hy-Vee and Roberts discriminated against him by (1) terminating his employment and harassing him because of his disability and (2) failing to reasonably accommodate his disability. On February 9, 2016, the court granted Hy-Vee and Roberts's motion and dismissed the case. Fitzgerald appeals.

## II. Standard of Review

We review a district court's grant of summary judgment for correction of errors at law. *See Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6 (Iowa 2014). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Goodpaster*, 849 N.W.2d at 6. "[A] 'factual issue is "material" only if "the dispute is over facts that might affect the outcome of the suit."'" *Peak v. Adams*, 799 N.W.2d 535, 542 (Iowa 2011) (quoting *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 717 (Iowa 2001)). "An issue of fact is 'genuine' if the evidence is such that a reasonable finder of fact could return a verdict or decision for the nonmoving party." *Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006). "Speculation is insufficient to create a genuine

issue of material fact." *Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 5 (Iowa 2008). The burden is on the moving party to show the nonexistence of a material fact. *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434 (Iowa 2008). "However, the nonmoving party may not rest upon the mere allegations of his pleading but must set forth specific facts showing the existence of a genuine issue for trial." *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005) (citing Iowa R. Civ. P. 1.981(5)).

In determining whether summary judgment is appropriate, the court shall consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Iowa R. Civ. P. 1.981(3). We must view the facts "in the light most favorable to the nonmoving party" and "draw all legitimate inferences the evidence bears in order to establish the existence of questions of facts." *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 140 (Iowa 2013) (quoting *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96–97 (Iowa 2012)).

### III.    Analysis

Fitzgerald argues the district court erred in failing to view the facts in the light most favorable to him. He also claims the court erred in its analysis of his prima facie case of discrimination and in holding he had failed to prove Hy-Vee's reason for his employment termination was pretextual. Finally, Fitzgerald claims the court erred in holding his failure-to-accommodate claims were time-barred.

### A.    Discrimination Claim

Under the ICRA, it is "unfair or discriminatory" for an employer "to discharge any employee, or to otherwise discriminate in employment against . . . any employee because of the . . . disability of such . . . employee." Iowa Code

§ 216.6(1)(a). Fitzgerald has not presented direct evidence of discrimination; therefore, we examine his claim of indirect evidence of discrimination under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973),[4] which first requires a plaintiff to establish a prima facie case of discrimination, *id.* Once the plaintiff has established a prima facie case, a rebuttable presumption of discrimination is created, and the burden shifts to the defendant-employer to rebut the presumption by articulating a legitimate, nondiscriminatory reason for its actions. *Casey's Gen. Stores, Inc. v. Blackford*, 661 N.W.2d 515, 519–20 (Iowa 2003); *see also Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1021 (8th Cir. 1998). If the employer proffers such a reason, the presumption of discrimination disappears and the burden shifts back to the plaintiff to demonstrate the nondiscriminatory reason asserted by the employer is merely a pretext for intentional discrimination. *Casey's*, 661 N.W.2d at 520; *see also Young*, 152 F.3d at 1021.

---

[4] On appeal, Fitzgerald questions the application of *McDonnell Douglas* to disability discrimination claims brought under the ICRA. As Fitzgerald acknowledges, Iowa courts have repeatedly and frequently applied the *McDonnell Douglas* framework to cases involving claims of employment discrimination. *See, e.g.*, *McQuistion v. City of Clinton*, 872 N.W.2d 817, 829 (Iowa 2015); *Wyngarden v. State Judicial Branch*, No. 13-0863, 2014 WL 4230192, at *8 (Iowa Ct. App. Aug. 27, 2014). We are not at liberty to overturn precedent of our supreme court, *see State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) (acknowledging both the district court and the court of appeals had "properly relied on . . . applicable precedent" and noting "it is the role of the supreme court to decide if case precedent should no longer be followed"), nor are we inclined to in this instance, *see McQuistion*, 872 N.W.2d at 828 ("Our legislature has impliedly indicated approval of the use of the *McDonnell Douglas* test to address employment policies that potentially discriminate against pregnant employees by mirroring language used in the analytical approach applied in that case."). Additionally, Fitzgerald failed to preserve error on this issue. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

In order to establish a prima facie case, Fitzgerald must prove "(1) he has a disability, (2) he is qualified to perform the essential functions of the . . . position, and (3) the circumstances of his termination raise an inference of illegal discrimination." *Goodpaster*, 849 N.W.2d at 6. The district court here concluded Fitzgerald failed to demonstrate a prima facie case of discrimination based on his claimed disabilities. The court further found that, even if Fitzgerald had established a prima facie case, Fitzgerald had not offered evidence to generate a genuine issue of material fact on the pretext element of his claim.

We need not examine whether Fitzgerald has established a prima facie case of discrimination[5] because Hy-Vee and Roberts have asserted a legitimate, nondiscriminatory reason for terminating Fitzgerald's employment—Fitzgerald violated Hy-Vee's anti-harassment policy and created a hostile work environment when he referred to a fellow manager using a derogatory term while speaking with another employee. *See Jones*, 836 N.W.2d at 148 ("We find it unnecessary to resolve the question of whether [the plaintiff] has made out a prima facie case of discrimination" because the defendant "has produced a legitimate nondiscriminatory reason for [the plaintiff]'s termination and, accordingly, the burden shifts to [the plaintiff] to show that the proffered reason is pretextual."). Consequently, the burden shifts to Fitzgerald to prove Hy-Vee and Roberts's proffered reason was pretextual. *See id.*

Fitzgerald complains the district court did not view the evidence in the light most favorable to him and actually omitted favorable evidence of discrimination.

---

[5] At summary judgment, Hy-Vee and Roberts did not contest the first two elements but reserved the right to contest them if the claims proceeded to trial.

Fitzgerald claims the court erred in finding his employment was terminated on August 31, 2012, and his termination paperwork was formally processed on September 3, 2012. Fitzgerald also claims the court omitted evidence of discrimination in its analysis, including statements Roberts made to Fitzgerald upon his return from knee surgery in 2011, Fitzgerald's internal harassment claim against Roberts and Hy-Vee's response, and Roberts's failure to accommodate Fitzgerald's work restrictions.

Fitzgerald does not, until his reply brief, assert a specific date upon which his employment with Hy-Vee was terminated. Rather, he asserts that, in viewing the facts in the light most favorable to him, the district court should have inferred from the record that the termination did not occur on August 31, 2012.

There is no dispute Fitzgerald was told on August 31 in his meeting with Roberts and Threlkeld that his employment would be terminated because he had violated the company's anti-harassment policy but that his termination would not be processed "right away" in case Fitzgerald was able to transfer to another store. Instead, the dispute concerns whether Roberts or Threlkeld informed Fitzgerald they planned to process his termination the following Monday or even at all. Fitzgerald asserts after he was told he was being terminated and brought up his addiction issues, Roberts decided to spare his job and allow him to transfer to another store. Fitzgerald contends the date of his termination is material "because Fitzgerald was actually terminated during the same conversation in which he requested an accommodation for his drug/alcohol addiction."

In his affidavit, Fitzgerald acknowledges Roberts told him in the meeting on August 31 that "I was being terminated" based on Fitzgerald's creation of "a hostile environment." Fitzgerald states, "After being told I was being terminated, I then raised my addiction issues as an explanation for my behavior the day before and asked for help." He claims after his disclosure of his addictions, Threlkeld and Roberts asked him to leave the room. Upon his return, Roberts informed Fitzgerald that he could transfer to another store but gave no timeframe by which a transfer must be completed. Fitzgerald contends he was never told his termination would be processed at all, let alone the following Monday. He asserts he believed his job had been spared. He also asserts the text messages between himself and Roberts show his employment was not terminated. On September 4, Fitzgerald contacted Roberts to discuss FMLA leave for his addiction issues, and Roberts responded he could not grant Fitzgerald's request because his employment had already been terminated. Additionally, Fitzgerald's ICRC complaint provides the date his employment with Hy-Vee ended was on August 31, 2012.

Hy-Vee and Roberts assert Fitzgerald's employment was terminated on August 31, but they allowed him to apply for a transfer to another store over the weekend before they processed the termination. Roberts, Subject, and Threlkeld all testified Fitzgerald was terminated from employment on August 31. Roberts, who was in charge of all employment decisions for the store where Fitzgerald

worked, completed a termination report that listed Fitzgerald's termination date as August 31, 2012.[6]

Based on the record before us, Fitzgerald has failed to "set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5). In his opening brief, Fitzgerald did not assert a date on which the termination occurred, only that he has provided evidence to show his employment was not terminated on August 31 as Hy-Vee and Roberts allege, but rather, "at some point in the fall of 2012." Fitzgerald cannot rely upon mere allegations that his termination from employment occurred after August 31, 2012. *See Hlubek*, 701 N.W.2d at 95. Thus, the district court did not err in determining there was no genuine issue of fact as to whether Fitzgerald's employment was terminated on August 31, 2012.[7]

Fitzgerald also complains the district court concocted the fact that Roberts formally processed his termination paperwork on September 3, 2012. Roberts has consistently asserted he planned to formally process Fitzgerald's termination paperwork on Monday, September 3, 2012, at the end of the pay period because Fitzgerald was owed vacation time for the holiday. In his deposition, Roberts testified he did in fact process Fitzgerald's paperwork on that day. We conclude

---

[6] Subject also completed a termination report for Fitzgerald dated September 1, 2012. At the latest, Fitzgerald's employment was terminated on September 4 when Roberts informed him he could not accept his FMLA paperwork because his employment had already been terminated.

[7] Furthermore, whether Fitzgerald's employment with Hy-Vee was terminated on Friday, August 31, 2012, or early the following week is immaterial because it does not affect the outcome of the suit. *See Peak*, 799 N.W.2d at 542. As discussed below, Fitzgerald is unable to demonstrate Hy-Vee's articulated reason for his termination from employment was pretextual.

the district court did not err in determining as a matter of law that Roberts formally processed Fitzgerald's termination paperwork on September 3, 2012.

We next consider whether Fitzgerald has demonstrated a genuine issue of material fact to allow a reasonable jury to conclude Hy-Vee and Roberts's reason for terminating his employment was merely a pretext for intentional discrimination based on his claimed disabilities. *See Casey's*, 661 N.W.2d at 520; *see also Young*, 152 F.3d at 1021. Fitzgerald does not contend the term he used to reference Obermeier is not offensive or derogatory or that Hy-Vee did not have the right to terminate his employment based on his use of the term when referring to a coworker.

Fitzgerald underwent surgery on his knee in July 2011. He went on FMLA leave from July until late September 2011. He returned to work at Hy-Vee in late September and continued to experience problems with pain and swelling. Fitzgerald claims he notified Hy-Vee management of his work restrictions and Roberts ignored them. He also claims Roberts made harassing comments to him about his FMLA leave and knee injury. Subsequently, Fitzgerald filed an internal harassment complaint against Roberts with Hy-Vee's human resources department, which conducted an investigation while Fitzgerald went on leave. Hy-Vee determined Roberts was not unreasonable and Fitzgerald needed to take things "less personal." Fitzgerald was asked to bring in his work restrictions when he returned from leave. Fitzgerald claims he brought in an updated doctor's note when he returned in November 2011 and placed it on Roberts's desk and Roberts again ignored his restrictions. Fitzgerald asserts he did not make any additional requests or complaints because he feared reprisals and

believed any requests would simply be ignored by Roberts. He baldly contends "[t]his evidence tends to show that the termination was motivated by Fitzgerald's disabilities."

Fitzgerald has always admitted he used a derogatory term to refer to Obermeier while speaking with another coworker on August 30, 2012. He does not deny Subject confronted him about the comment the following morning. Fitzgerald further admits he was called into a meeting with Roberts and Threlkeld on August 31 to discuss the incident and, after Fitzgerald confirmed it had occurred, Roberts informed him his employment was being terminated because he had violated the company's anti-harassment policy and created a hostile work environment. Additionally, Fitzgerald admitted at his unemployment insurance appeal hearing that he was discharged for violating Hy-Vee's anti-harassment policy. He also admitted he was aware his conduct violated the policy and Hy-Vee's code of conduct and had received training on workplace harassment and prevention. Consistent testimony by Roberts, Threlkeld, and Subject "corroborate[s] the legitimate nondiscriminatory motivation" for Fitzgerald's termination that Roberts and Threlkeld provided to him on the day they learned about the incident and told him he was being terminated. *Jones*, 836 N.W.2d at 148.

Based upon our review of the summary judgment record, there is not a genuine issue of material fact to support Fitzgerald's claim that his employment termination on August 31, 2012, was not based on his violation of Hy-Vee's anti-harassment policy. Consequently, we find Fitzgerald has failed to present "sufficient admissible evidence from which a rational trier of fact could find [Hy-

Vee and Roberts's] alleged reason[] for [his] termination [was] false" and that his disabilities were the motivating factor in his termination. *Smidt v. Porter*, 695 N.W.2d 9, 15 (Iowa 2005); *see also Morris v. Winnebago Indus.*, 936 F. Supp. 1509, 1524 (N.D. Iowa 1996) (noting pretext may be shown by "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could rationally find them unworthy of credence, and hence infer the employer did not act for [the asserted] non-discriminatory reasons" (second alteration in original) (citation omitted)). Thus, the district court's ruling granting summary judgment in favor of Hy-Vee and Roberts on Fitzgerald's discrimination claim is affirmed.

### B. Failure-to-Accommodate Claims

#### 1. Knee Disability

Fitzgerald asserts his claim for failure to accommodate his knee disability was timely and the district court erred in dismissing his claim. Iowa Code section 216.15(13) provides "a claim under [chapter 216] shall not be maintained unless a complaint is filed with the [ICRC] within three hundred days after the alleged discriminatory or unfair practice occurred." Thus, the district court found that, pursuant to section 216.15(13), "the alleged discriminatory conduct must have occurred on or after August 10, 2012, for [Fitzgerald]'s claim to be timely."

Fitzgerald underwent surgery on his knee in July 2011. He returned to work following the surgery in late September. He alleges he provided his work

restrictions to Hy-Vee management in September and November 2011.[8] He did not make any other requests for accommodation for his knee injury. Fitzgerald filed his complaint with the ICRC on June 6, 2013. Accordingly, the district court determined Fitzgerald's failure-to-accommodate claim based on his knee injury was untimely because it had been filed with the ICRC more than three hundred days after the alleged discrimination had occurred.

Fitzgerald does not dispute his requests for an accommodation regarding his knee injury were made in the fall of 2011 and that he did not make any additional requests for an accommodation after November of that year. Instead, he argues the denial of his requests—the alleged discriminatory or unfair practice—continued from the time he first informed Hy-Vee management of his restrictions until the time his employment was terminated. Thus, he contends, the discriminatory or unfair practice occurred within the required three-hundred-day limitations period and his complaint was timely.

The district court examined the application of the "continuing violation" doctrine with respect to Fitzgerald's argument and rejected it. Fitzgerald does not appeal the court's rejection of the doctrine's application in this case; rather, he argues "that each time he was forced to work in violation of the restrictions applicable to his surgically-repaired knee, a repeated discrete discriminatory act occurred."

---

[8] We assume without deciding this was a sufficient request for an accommodation. *See Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 906 (8th Cir. 2015) ("To determine whether an accommodation for the employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.' This interactive, accommodation-seeking process must be initiated by the disabled employee, who must alert his employer to the need for an accommodation and provide relevant details of his disability." (citation omitted)).

In *Farmland Foods, Inc. v. Dubuque Human Rights Commission*, 672 N.W.2d 733, 741 (Iowa 2003), our supreme court adopted the "discrete acts" approach and found "[e]ach discrete discriminatory act or event is separately actionable, and a claim based on discrimination must be filed within the relevant limitation period after the act occurred[,] . . . even when the discrete discriminatory act relates to other acts alleged in a timely filed complaint." "[I]f there is no discriminatory act but only an effect of a past discriminatory act within the limitations period, then the claim is time-barred." *Dindinger v. Allsteel, Inc.*, 860 N.W.2d 557, 572 (Iowa 2015) (citing *State ex rel. Claypool v. Evans*, 757 N.W.2d 166, 171–72 (Iowa 2008)).

The district court concluded "[a]ll circumstances arising after defendants allegedly ignored plaintiff's requests for accommodation were merely effects of defendant's earlier action rather than additional discrete discriminatory acts." The court reasoned, "Defendants did not 'act,' wrongfully or otherwise, each time plaintiff worked without accommodation. Rather, at most, plaintiff was enduring the consequences of defendants' earlier alleged decision to not provide said accommodation." Likewise, we conclude each day that Fitzgerald continued to work without an accommodation is not a "separately actionable" discriminatory act but the continuing effect of an alleged past discriminatory act—Roberts and Hy-Vee's alleged denial of Fitzgerald's request for an accommodation for his knee injury. *See id.*; *Claypool*, 757 N.W.2d at 172; *see also Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) ("[T]he denial of a disabled employee's request for accommodation starts the clock running on the day it

occurs. . . . [S]uch a denial is a discrete discriminatory act that . . . does not require repeated conduct to establish an actionable claim.").

The record shows Fitzgerald filed a complaint with the ICRC more than three hundred days after the alleged discriminatory act occurred. Accordingly, the district court did not err in finding Fitzgerald's failure-to-accommodate claim for his alleged knee disability is time-barred.

### 2.    Chemical Addictions

Fitzgerald claims the district court erred in finding his claim for failure to accommodate his chemical addictions was untimely. Fitzgerald contends he requested an accommodation for his chemical addictions on September 4, 2012, when he asked Roberts for FMLA leave. Fitzgerald also complains the court erred in finding he was terminated from employment with Hy-Vee on August 31, 2012, and in finding Hy-Vee management did not know he was addicted to pain medications and alcohol prior to his termination from employment.

As noted above, Fitzgerald cannot rely upon mere allegations that his termination from employment occurred on September 4, 2012. *See Hlubek*, 701 N.W.2d at 95. No reasonable jury could conclude Fitzgerald's termination from the store he worked at occurred on any date other than August 31, 2012. The district court did not err in determining there was no genuine issue of fact as to whether Fitzgerald's employment was terminated on August 31, 2012. Still, regardless of what date Fitzgerald's employment with Hy-Vee was terminated, the fact is immaterial because Fitzgerald did not request an accommodation for his chemical addictions until after he learned he would be terminated.

In a factually similar case in which an employee made a derogatory comment about a coworker in violation of the company's anti-harassment policy while speaking with another coworker, the Eighth Circuit held the employee's request to stay in his current position, if considered a request for an accommodation, "was untimely because it came after [the employee]'s comment." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 906 (8th Cir. 2015). The court agreed with the district court's conclusion that "liability is not established where 'an employee engages in misconduct, learns of an impending adverse employment action, and then informs his employer of a disability that is the supposed cause of the prior misconduct and requests an accommodation.'" *Id.* (quoting *Schaffhauser v. United Parcel Serv.*, 2014 WL 197684, at *1, *10 (E.D. Ark. Jan. 15, 2014)); *see also Hill v. Kansas City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999); *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012) ("When an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be 'too little, too late.'" (citation omitted)); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) ("[T]he law does not require the [defendant] to ignore misconduct that has occurred because the [plaintiff] subsequently asserts it was the result of a disability."); *Davila v. Qwest Corp.*, 113 F. App'x 849, 854 (10th Cir. 2004) ("[E]xcusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the [Americans with Disabilities Act]."). Likewise, it is undisputed Roberts informed Fitzgerald he would be terminated because of his comment about Obermeier

*before* Fitzgerald disclosed his addictions to Roberts.  Fitzgerald's request for an accommodation for his alleged chemical addictions was untimely, and we affirm the district court's decision as to this issue.

### IV.  Conclusion

We conclude there is no genuine issue of material fact to support Fitzgerald's claim of discrimination.  Further, we find the district court did not err in finding Fitzgerald's failure-to-accommodate claim for his alleged knee disability was time-barred and his failure-to-accommodate claim for his alleged chemical addictions was untimely.  Accordingly, we affirm.

**AFFIRMED.**